ROBERT A. CRINKLEY, Plaintiff-Appellant, *v.* DOW JONES & COM-PANY, INC., *et al.*, Defendants-Appellees.

First District (5th Division)   No. 81—495

Opinion filed August 19, 1983.—Rehearing denied November 28, 1983.

Joseph Michael O'Callaghan, of Chicago, and William P. Treacy, Ltd., of Winnetka, for appellant.

Frederick J. Artwick and James S. Whitehead, both of Chicago, for ap-

pellee G.D. Searle & Company.

Jeremiah Marsh and Michael M. Conway, both of Chicago, for appellee Dow Jones & Company.

PRESIDING JUSTICE WILSON delivered the opinion of the court:

This appeal is from a judgment of the circuit court of Cook County dismissing counts I, II, V and VI of plaintiff's complaint which alleged libel *per se*. The issues presented are: (1) whether the trial court erred in its application of the innocent construction rule to defendants' statements which allegedly imputed to plaintiff want of integrity in his business and the commission of a crime; (2) whether defendants' statements constitute libel *per se* by imputing to plaintiff want of integrity in the discharge of his employment; (3) whether defendants' statements constitute libel *per se* by accusing plaintiff of the commission of a crime; and (4) whether the innocent construction rule is unconstitutional as applied to multistate libel actions. We affirm in part and reverse in part.

The article upon which the complaint was based appeared in two segments on April 26 and 27, 1976, in the Wall Street Journal, which is published by defendant Dow Jones and Company (Dow Jones) and is circulated in Illinois and throughout the United States. The article reported a statement made by defendant G. D. Searle and Company (Searle) concerning plaintiff, a former Searle executive. The pertinent portion of the article stated:

"In another development, Searle disclosed that two top officers involved in the payment of $1.3 million to agents of foreign governments to win business abroad have resigned. William Owens, a director and group vice-president in charge of the medical instruments division, and Robert Crinkley, president of the radiographics division, quit in early February. A brief reference to Mr. Owens' resignation was in the annual report but the reason wasn't mentioned. A spokesman said the two were the only resignations to result from the disclosures about payoffs.

In February, after the resignations, Searle told the Securities and Exchange Commission that 'certain members of corporate management were generally aware that some such payments were being made and, in some instances, authorized the arrangements to make payments.'
* * *

In reference to the possibility of a grand jury indictment and conviction, Mr. Searle refused to say that any officer found guilty would be fired. That would depend on 'the nature of the trial and the accusation' he said."

Counts I, II, V and VI of plaintiff's complaint alleged two counts of defamation against each defendant on the theory that the aforementioned statements were completely false; that they were known by Searle to be false; that in the exercise of customary, prudent and accepted journalistic practice Dow Jones could have ascertained that the statements were false; and that the Wall Street Journal failed and neglected to exercise such customary, prudent and accepted practice.

Counts I and II alleged a claim against Dow Jones based on libel. Count V alleged that the false statements made by an agent of Searle to Dow Jones were defamatory and sought damages for injury to plaintiff's good name, credit and reputation, both personally and in the business community. Count VI sought additional damages for injury to plaintiff's general good reputation for honesty and integrity.[1]

In response, defendants moved to dismiss for failure to state a cause of action for libel or slander pursuant to section 45 of the Civil Practice Act (Ill. Rev. Stat. 1977, ch. 110, par. 45), now codified as section 2—615 of the Code of Civil Procedure (Ill. Rev. Stat. 1981, ch. 110, par. 2—615). Defendants' amended motions alleged that the statements are capable of a nondefamatory, innocent meaning.[2] On

---

[1]Counts III and VII alleged causes of action against both defendants for interference with business expectancy. Counts IV and VIII alleged causes of action against both defendants for violation of the Uniform Deceptive Trade Practices Act. These counts were dismissed by a previous order of the trial court, which order was reviewed by this court in *Crinkley v. Dow Jones & Co.* (1978), 67 Ill. App. 3d 869, 385 N.E.2d 714. There, we reversed the trial court's order of dismissal of the interference with business expectancy counts but affirmed the dismissal of the Uniform Deceptive Trade Practices Act counts.

[2]Although defendants' original motions to strike and dismiss appear to attack the sufficiency of counts I, II, V and VI and to have been filed under section 45, the amended motions also raise matters properly treated under section 48(1)(i). That section provides that if the grounds for dismissal do not appear on the face of the pleading attacked by a motion to dismiss, the motion "shall be supported by affidavit *** [stating] that the claim *** is barred by other affirmative matter avoiding the legal effect of or defeating the claim or demand." (Ill. Rev. Stat. 1977, ch. 110, par. 48(1)(i), now codified as Ill. Rev. Stat. 1981, ch. 110, par. 2—619(a)(9).) The question whether the allegedly nondefamatory statements are rendered nondefamatory by the innocent construction rule is, therefore, properly considered under section 48(1)(i). *John v. Tribune Co.* (1962), 24 Ill. 2d 437, 181 N.E.2d 105; *Davis v. Keystone Printing Service, Inc.* (1982), 111 Ill. App. 3d 427, 432-33, 444 N.E.2d 253; *Nagib v. News-Sun* (1978), 64 Ill. App. 3d 752, 757, 381 N.E.2d 1014.

January 21, 1981, the trial court dismissed the action with prejudice. The court commented tangentially that this case "invite[s] the incisiveness of the innocent construction rule." The memorandum order thus does not credit the rule as the basis for the dismissal.

Plaintiff appealed and on his motion we granted a stay of oral argument until the Illinois Supreme Court rendered its decision in a related case, *Chapski v. Copley Press* (1982), 92 Ill. 2d 344, 442 N.E.2d 195. Subsequent to the court's ruling, we granted defendants' motion for leave to file supplemental briefs as to the effect of the *Chapski* decision on this appeal.

OPINION

■ Initially, plaintiff contends that the statements made by Searle in the article constitute libel *per se* and that application of the innocent construction rule would be improper.[3] He contends further that even if the words are not libelous *per se*, he is entitled to special damages.

An allegation that a statement (1) falsely imputes plaintiff's unfitness or want of integrity in performing the duties of an office or employment and (2) falsely accuses plaintiff of committing a crime is sufficient to support a defamation action against the person making the statement. (*Bruck v. Cincotta* (1977), 56 Ill. App. 3d 260, 371 N.E.2d 874; *Welch v. Chicago Tribune Co.* (1975), 34 Ill. App. 3d 1046, 340 N.E.2d 539; *Bontkowski v. Chicago Sun-Times & Field Enterprises, Inc.* (1969), 115 Ill. App. 2d 229, 252 N.E.2d 689; *Grabavoy v. Wilson* (1967), 87 Ill. App. 2d 193, 230 N.E.2d 581; *Whitby v. Associates Discount Corp.* (1965), 59 Ill. App. 2d 337, 207 N.E.2d 482; 33A Ill. L. & Prac. *Slander & Libel* sec. 27 (1970).) In determining whether a statement imputes want of integrity to plaintiff in his business or accuses him of committing a crime, the innocent construction rule must be consulted.

■ The supreme court held in *John v. Tribune Co.* (1962), 24 Ill. 2d 437, 442, 181 N.E.2d 105, that when considering allegedly defamatory language, the words are to be read as a whole and given their natural and obvious meaning. Words that are capable of being read innocently *must be so read* and declared nonactionable as a matter of law. The innocent construction rule as set forth by the supreme court

---

[3]Plaintiff relies in part on this court's ruling in the previous appeal of this matter that "the statement appears to have imputed want of integrity to plaintiff in his business, which may be actionable under a defamation theory." *Crinkley v. Dow Jones & Co.* (1979), 67 Ill. App. 3d 869, 876, 385 N.E.2d 714.

in its most recent decision, however, requires that the statement be considered in context with the words and the implications therefrom given their natural and obvious meaning. If, as so construed, the statement *may reasonably be innocently interpreted or reasonably be interpreted as referring to someone other than the plaintiff, it cannot be actionable per se. (Chapski v. Copley Press* (1982), 92 Ill. 2d 344, 352, 442 N.E.2d 195.) Thus, the *Chapski* holding has modified the rule as stated in *John* in that the supreme court has discarded the language of the former rule that "words allegedly libelous that are capable of being read innocently *must* be so read." (Emphasis added.) 24 Ill. 2d 437, 442.

The elimination of such broad language appears to be a significant change. We further note that the *Chapski* decision reaffirms the discarding of the English rule of *mitior sensus* (best possible sense). The court noted that the abrogation of the doctrine was a result of its artificial and strained application. (92 Ill. 2d 344, 349, 350.) The supreme court additionally modified the innocent construction rule by including the language that "words and the implications therefrom" are to be considered in context in determining whether language is actionable *per se*. The court acknowledged that the modification of the rule was an effort to rectify the inconsistencies, inequities and confusion occasioned by application of the *John* rule. The court further observed that the first amendment rights of media defendants have been expanded since *John*. (92 Ill. 2d 344, 351.) Finally, the court reasoned that a modification of the innocent construction rule "would better serve to protect the individual's interest in vindicating his good name and reputation, while allowing the first amendment guarantees that 'breathing space' essential to their fruitful exercise." 92 Ill. 2d 344, 351-52.

■ Applying the *Chapski* innocent construction rule to the facts before us, in our judgment the statements may be read as imputing want of integrity to plaintiff in his business. The words can be read as accusing plaintiff of making payments "to agents of foreign governments to win business abroad" and that the disclosure of the "payoffs" resulted in plaintiff's resignation. Plaintiff alleges that these accusations are false and that they cannot reasonably be innocently interpreted.

A false statement which imputes that a person lacks integrity in the discharge of the duties of his employment is actionable as defamation. (See *Colson v. Stieg* (1982), 89 Ill. 2d 205, 433 N.E.2d 246; *Makis v. Area Publications Corp.* (1979), 77 Ill. App. 3d 452, 395 N.E.2d 1185; *Whitby v. Associates Discount Corp.* (1965), 59 Ill. App. 2d 337,

207 N.E.2d 482; 33A Ill. L. & Prac. *Slander & Libel* sec. 27 (1970).) Moreover, because the words in the case at bar in their entire context can reasonably be interpreted as imputing to plaintiff a lack of integrity, we hold that they are actionable *per se*. (*Chapski v. Copley Press* (1982), 92 Ill. 2d 344, 352, 442 N.E.2d 195.) Having so ruled, we find defendants' rebuttal argument to be without merit. Defendants assert that plaintiff's contention that the statements impute to him a want of integrity in his employment with Searle is not the only reasonable interpretation of the article under the innocent construction rule. Defendants further contend that the article does not say that plaintiff made any payments, that the payments were anything other than legitimate business expenses, or that the payments were immoral, unlawful or a violation of any duty owed to Searle. They argue that the article states that the payments were, in part, authorized by management and that the article reports plaintiff's resignation, not his discharge. We disagree.

As aforementioned, *Chapski* holds that the implication of words are to be considered in their context in determining whether language is actionable *per se*. (92 Ill. 2d 344, 352.) We also note that in *Sloan v. Hatton* (1978), 66 Ill. App. 3d 41, 383 N.E.2d 259, this court stated:

"The same words uttered in one situation may be universally acknowledged as innocuous, but in another be unchallenged as amounting to libel or slander. Communication does not occur in a vacuum or void—it is employed in the normal course of human relations, in social and commercial intercourse." (66 Ill. App. 3d 41, 42-43.)

Thus, an innocent construction requires a fair reading of the entire article which gives the words their meaning. Isolated words such as "involved," "payment" and "payoffs" may not be taken out of context. We therefore do not believe it is reasonable to construe defendants' statements innocently, given the context in which they appear, and their natural and obvious interpretation. The cases on which defendants rely in this regard are unpersuasive in light of the supreme court's modification of the rule as stated in *Chapski*. (*Valentine v. North American Co. for Life & Health Insurance* (1974), 60 Ill. 2d 168, 328 N.E.2d 265; *Kakuris v. Klein* (1980), 88 Ill. App. 3d 597, 410 N.E.2d 984; *Adreani v. Hansen* (1980), 80 Ill. App. 3d 726, 400 N.E.2d 679.) The trial court's order dismissing the counts alleging plaintiff's lack of integrity was, therefore, improper.

It is next contended that the statements were defamatory because they falsely accuse plaintiff or committing the crime of bribing foreign agents to influence the decision of foreign governments. An

allegation that a statement falsely accuses a person of committing a crime is sufficient to support a defamation action against the person making the statement. (*Zeinfeld v. Hayes Freight Lines, Inc.* (1968), 41 Ill. 2d 345, 348, 243 N.E.2d 217; *Makis v. Area Publications Corp.* (1979), 77 Ill. App. 3d 452, 456, 395 N.E.2d 1185.) It is not necessary that the words state the commission of a crime in terms of art or with the particularity of an indictment for such words to be libelous. (*Catalona v. Pechous* (1980), 83 Ill. 2d 146, 157, 419 N.E.2d 350; *Jacobs v. Gasoline Retailers' Association* (1975), 28 Ill. App. 3d 7, 9, 328 N.E.2d 187.) Words are not actionable, however, if they may reasonably be innocently interpreted or reasonably be interpreted as referring to someone other than the plaintiff. *Chapski v. Copley Press* (1982), 92 Ill. 2d 344, 352, 442 N.E.2d 195.

In the case at bar, even assuming that the only reasonable interpretation is that the statements accuse plaintiff of bribing foreign officials, such conduct at the time of the articles' publication in 1976 was not a criminal offense under the Illinois criminal code or under Federal law.[4] Moreover, we note that plaintiff has conceded in his brief that the foreign bribery he claims he was accused of was not a crime. We conclude, therefore, that the words were not defamatory *per se* because they did not accuse plaintiff of a criminal violation. Plaintiff's alternative contention that the article constituted libel *per se* because the average reader would mistakenly think he was accused of a crime and would not know that foreign bribery was a lawful act is without merit. Accordingly, the trial court's determination that the statements did not accuse plaintiff of a crime was correct. Because of our resolution of this appeal, we need not address plaintiff's other issues.

For the foregoing reasons, the trial court's order dismissing plaintiff's counts I and V (criminal conduct) is affirmed; the order dismissing plaintiff's counts II and VI (lack of integrity) is reversed and remanded for proceedings consistent with this opinion.

Affirmed in part, reversed in part and remanded.

SULLIVAN and O'CONNOR, JJ., concur.

---

[4]The bribery of an agent of a foreign government was not a criminal act until the enactment of the Foreign Corrupt Practices Act on December 19, 1977. 15 U.S.C. sec. 78dd—1 *et seq.* (Supp. 1977).