AMERICAN WHEEL & ENGINEERING COMPANY, INC., *et al.*, Plaintiffs and Counterdefendants-Appellants, v. DANA MOLDED PRODUCTS, INC., *et al.*, Defendants and Counterplaintiffs-Appellees.

First District (4th Division)   No. 84—340

Opinion filed March 28, 1985.

John M. Bowlus and Philip N. Hablutzel, both of Chicago, for appellants.

Geoffrey G. Gilbert and Malcolm H. Brooks, both of McBride, Baker & Coles, of Chicago, for appellees.

JUSTICE JOHNSON delivered the opinion of the court:

Plaintiffs, American Wheel & Engineering Company, Inc. (American Wheel), and Richard Brodner, its president, appeal from a judgment of the circuit court of Cook County in favor of defendants. Plaintiffs contend the following findings of the trial court were contrary to the manifest weight of the evidence: (1) that plaintiffs did not possess a trade secret in either a plastic formula or certain customer information; (2) that defendants did not participate in any deceptive business practices in competing against plaintiffs; and (3) that defendants did not use fraud in obtaining a series of promissory notes from plaintiff.

We affirm.

Testimony at trial established that American Wheel, an Illinois corporation, sells plastic caster wheels. Dana Molded Products, Inc. (Dana), defendant, is an Illinois corporation in the business of plastic injection molding, a process whereby molten plastic is injected into a metal mold of a desired part and chilled until solidification. Janbar Wheel Corporation (Janbar), defendant, is an Illinois corporation that sells plastic caster wheels, and Daniel Hidding, defendant, is the president of Dana and Janbar.

In 1975, plaintiff Brodner organized American Wheel and asked Dana to be its molder. Dana bought raw materials directly from suppliers, provided all of the equipment to operate the molds, and provided the labor necessary to make the wheels. Dana designed the molds, but American Wheel owned them. When American Wheel made a sale, Dana would mold the product and ship it directly to American Wheel's customer. Dana billed American Wheel and American Wheel billed the customer; the customer paid American Wheel directly and American Wheel paid Dana.

This relationship began to deteriorate sometime in 1978. Late in that year, Hidding decided to market caster wheels himself and established Janbar Corporation for that purpose. On or before January 17, 1979, Hidding informed Brodner that he would sell wheels as a competitor of American Wheel and, therefore, American Wheel should re-

move its caster wheel mold from Dana to another molder.

During this time, American Wheel's account with Dana fell into arrears, but Dana continued to mold for American Wheel. Brodner and Hidding negotiated to resolve their financial differences. Sometime in February 1979, American Wheel executed six promissory notes, personally guaranteed by Brodner, to cover all past due invoices over 30 days, payable over four months and bearing interest after maturity. Dana continued to mold wheels for American Wheel's customers until plaintiffs filed this lawsuit.

In plaintiffs' complaint, filed February 23, 1979, they claimed that defendants (1) misappropriated an alleged trade secret (the formula for the plastic compound from which the wheels were manufactured) and information on plaintiffs' customers, (2) participated in deceptive trade practices, and (3) fraudulently induced plaintiffs to execute the promissory notes. Plaintiffs sought damages on their trade secrets and deceptive business practices claims, and rescission of the notes based on the fraud claim. On January 10, 1984, the court, in a bench trial, rendered judgment for defendants on all issues, specifically finding that no trade secret existed in the plastic formula, that plaintiffs made no effort to protect the secrecy of any customer list, and that defendants did not use fraud in obtaining the promissory notes from plaintiffs. Plaintiffs appeal.

## I. Trade Secrets Issue

### A. THE FORMULA

■ Plaintiffs claim that the trial court erred in finding no trade secret in the formula for the plastic compound from which the caster wheels were manufactured.

Testimony established that plaintiffs employed Complas Industries, Inc., a custom compounder, and Keystone Testing Laboratories, a product testing company, to develop a type of plastic that reached specified levels of durability, impact load, and temperature. Complas experimented with Complas PP6200, a generic compound of rubber and polypropolene materials having similar minimum physical property characteristics, commonly and widely used in manufacturing caster wheels. The record shows that Complas' experiments entailed varying the combinations of the "ingredients" to PP6200 to obtain a particular "recipe" that yielded a plastic possessing the specifications that plaintiffs desired. Plaintiffs claim that this recipe of PP6200 is their trade secret and that defendants misappropriated it when they began selling caster wheels made of the same recipe.

A trade secret is generally described as "a plan or process, tool, mechanism, compound, or informational data utilized by a person in his business operations and known only to him and such limited other persons to whom it may be necessary to confide it." (*ILG Industries, Inc. v. Scott* (1971), 49 Ill. 2d 88, 92, 273 N.E.2d 393, 395.) An exact definition of a trade secret is impossible because it includes a wide spectrum of categories subject to variations depending upon the facts of a particular case. (*ILG Industries, Inc. v. Scott* (1971), 49 Ill. 2d 88, 92, 273 N.E.2d 393, 395.) Some factors that a court may consider in determining whether particular information is a person's trade secret include " '(1) the extent to which the information is known outside of his business; (2) the extent to which it is known by employees and others involved in his business; (3) the extent of measures taken by him to guard the secrecy of the information; (4) the value of the information to him and his competitors; (5) the amount of effort or money expended by him in developing the information; (6) the ease or difficulty with which the information could be properly acquired or duplicated by others.' " *ILG Industries, Inc. v. Scott* (1971), 49 Ill. 2d 88, 93, 273 N.E.2d 393.

The trial court was not in error in finding that plaintiffs do not have a trade secret in the contested recipe of PP6200. Although plaintiffs fulfill the fifth factor (an investment of approximately $37,482 into the development of the recipe), they fail to meet all of the remaining factors.

Plaintiffs fail to meet the fourth factor because the plastic formula for their wheels has little value, *per se*, to either them or their competitors. Testimony adduced at trial reveals that the relationship between sellers and custom compounders is one of ends and not means. Plaintiffs approached Complas and asked for a plastic compound that met certain specifications. Complas did not tell plaintiffs, and would not tell any other seller, the formula to the plastic compound. In fact, Complas considered such formulae to be its property. The record also shows that more than one recipe of PP6200 could produce a compound with the desired properties. Plaintiffs' goal of a plastic compound meeting certain specifications of durability, impact load, and temperature, therefore, could have been met by more than one recipe of PP6200. Lastly, the record is unclear whether defendants actually used the contested recipe of PP6200 or another recipe.

The remaining factors may be briefly addressed. The record shows that plaintiffs did nothing to guard the secrecy of the source or nature of the plastic compound, other sellers could easily acquire a plastic with the same specifications by merely requesting Complas to

produce it, and none of the plaintiffs or their employees knew what the recipe was. We hold that the trial court's finding that no trade secret existed in the plastic compound formula for plaintiffs' caster wheels was not contrary to the manifest weight of the evidence.

## B. CUSTOMER INFORMATION

■ Plaintiffs also contend that the trial court erred by finding no trade secret in their customer information. Plaintiffs claim that defendants obtained as customers the same persons who were plaintiffs' customers.

A customer list or other customer information constitutes a trade secret in which an employer holds a protectable interest where the employer developed the information over a number of years, at great expense, and kept the information under lock and key. The same type of information is not a trade secret where the employer had not treated the information as confidential and secret, where those in the field commonly knew the information or could have easily duplicated it, and where the employer's competitors knew the employer's customers. *Lincoln Towers Insurance Agency v. Farrell* (1981), 99 Ill. App. 3d 353, 358, 425 N.E.2d 1034, 1038.

The record reveals no evidence of a confidential list that plaintiffs developed over a number of years, nor that plaintiffs were the only persons in the field who knew the information, nor that plaintiffs kept the information under lock and key. Plaintiffs' actions demonstrated a lack of security measures and confidential treatment of customer names and requirements. We hold that the finding of the trial court that no trade secret existed in either the plastic formula or the customer information was not contrary to the manifest weight of the evidence.

## II. DECEPTIVE BUSINESS PRACTICES ISSUES

■ Plaintiffs claim that Janbar passed off its caster wheels as being the same as theirs by using plaintiffs' trade names for the plastic material in soliciting customers and by representing that its wheels were made from the same material as plaintiffs' wheels. Plaintiffs contend further that Janbar both passed off its wheels as being the same as theirs and disparaged their wheels by misstating the relationship between it and plaintiffs.

Plaintiffs base their deceptive practices claims on the Uniform Deceptive Trade Practices Act (Uniform Act) (Ill. Rev. Stat. 1981, ch. 121½, par. 311 *et seq.*) and the Consumer Fraud and Deceptive Business Practices Act (Consumer Fraud Act) (Ill. Rev. Stat. 1981, ch.

121½, par. 261 *et seq.*). The Uniform Act provides injunctive relief as its exclusive remedy (Ill. Rev. Stat. 1981, ch. 121½, par. 313), while the Consumer Fraud Act allows actions for damages (Ill. Rev. Stat. 1981, ch. 121½, par. 270a). Section 2 of the Consumer Fraud Act, however, incorporates section 2 of the Uniform Act (Ill. Rev. Stat. 1981, ch. 121½, par. 262). Through the incorporation, the General Assembly "intended to provide consumers with broader protection than initially provided under either act individually and to allow consumers to seek remedies for deceptive practices under the uniform act." *Glazewski v. Allstate Insurance Co.* (1984), 126 Ill. App. 3d 401, 408, 466 N.E.2d 1151, 1156.

"Passing off" refers to the deception of consumers as to the source of a product. (*Clairol, Inc. v. Andrea Dumon, Inc.* (1973), 14 Ill. App. 3d 641, 650, 303 N.E.2d 177, 184.) The Uniform Act describes this, in part, as a deceptive trade practice that a person commits when, in the course of business, he (1) passes off goods or services as those of another; (2) causes likelihood of confusion or of misunderstanding as to the source, sponsorship, approval or of certification of goods or services; or (3) causes likelihood of confusion or of misunderstanding as to affiliation, connection or association with or certification by another. Ill. Rev. Stat. 1981, ch. 121½, par. 312(1)(2)(3).

"Trade disparagement" refers to remarks that disparage the quality of one's goods or services. Section 2(8) of the Uniform Act substantially embodies the common law tort of commercial disparagement. (*Crinkley v. Dow Jones & Co.* (1979), 67 Ill. App. 3d 869, 876, 385 N.E.2d 714, 719.) A person engages in a deceptive trade practice also when he "(8) disparages the goods, services or business of another by false or misleading representation of fact." Ill. Rev. Stat. 1981, ch. 121½, par. 312(8).

The record does not support plaintiff's passing off and trade disparagement claims. Although Hidding mailed to prospective customers a list of its products using plaintiffs' trade names for the plastic materials, he identified Janbar as the seller, the use of the trade names lasted only for a short period of time (February 20 to March 19, 1979), and plaintiffs can attribute no sales to Janbar's use of the names. There is no passing off where a seller ensures that buyers are not under the impression that his goods are the products of his competitor. (*Duo-Tint Bulb & Battery Co. v. Moline Supply Co.* (1977), 46 Ill. App. 3d 145, 153, 360 N.E.2d 798, 804.) Janbar's representation that its wheels were made from the same material as those of plaintiffs was not passing off, because the record shows that both sets of

wheels were made from PP6200 and possessed the same specifications.

We hold that Janbar did not misstate its relationship to plaintiffs, thereby passing off their wheels and disparaging those of plaintiffs. Plaintiffs object to defendants referring to them as "brokers" or a "sales organization." The record shows that plaintiffs sold wheels while defendants made them. We hold that the trial court's judgment for defendants on the issues of passing off and trade disparagement was not contrary to the manifest weight of the evidence.

■ Lastly, plaintiffs contend that the trial court abused its discretion by failing to decide their claims made under the deceptive business practices acts. Rather than make any specific findings on these claims, the trial court ruled:

> "[T]hat the plaintiffs American Wheel and Engineering Co., and Richard Brodner shall recover nothing against the defendants Dana Molded Products Inc., Daniel P. Hidding and Janbar Wheel Corporation on the various claims asserted in their complaint as amended, all issues being resolved in favor of the defendants herein."

In a nonjury civil case, an order of the circuit court is not required to contain findings of fact or conclusions of law. The appealing party bears the burden of overcoming the presumption that the trial court's judgment is correct. The reviewing court will neither presume that error occurred in the trial court nor assume that the trial court misunderstood the applicable law, but will extend all reasonable presumptions in favor of the judgment or order from which the appeal is taken. (*Village of Cary v. Jakubek* (1984), 121 Ill. App. 3d 341, 345, 459 N.E.2d 651, 654.) We hold that the trial court did not abuse its discretion in its disposition of plaintiffs' claims under the deceptive business practices acts.

### III. FRAUD

■ Plaintiffs lastly contend that the trial court erred in finding that Hidding did not fraudulently induce them to execute the six promissory notes totaling approximately $203,000. Plaintiffs claim that Hidding did not inform them of his intentions to compete against them. They argue that Hidding should have so informed them because a confidential relationship existed between themselves and Hidding that obligated Hidding to tell them of his plans, and that they, or any rational business person, would not have executed promissory notes under such circumstances.

In addition to the misrepresentation of a material fact, fraud may

also consist of the omission or concealment of a material fact, with the intent to deceive, under circumstances creating an opportunity and duty to speak. *Perlman v. Time, Inc.* (1978), 64 Ill. App. 3d 190, 195, 380 N.E.2d 1040, 1044.

We agree with the trial court's finding that no confidential relationship existed between plaintiffs and defendants. Testimony adduced at trial shows that Hidding informed Brodner of his plans to compete with Brodner on or before January 17, 1979, before Brodner executed the notes. Hidding thereby ended their prior relationship. Contrary to plaintiffs' arguments as to what a rational business person would have done under these circumstances, we agree with the trial court's finding that plaintiffs executed the notes in settlement of their debt to defendants, so that defendants would continue to mold for them without interruption. We hold that the trial court's finding that no fraud existed in the execution of the promissory notes was not contrary to the manifest weight of the evidence.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

JIGANTI, P.J., and ROMITI, J., concur.