**UNIQUE CONCEPTS, INC., and Floyd M. Baslow, Plaintiffs,**

v.

**Ted MANUEL, d/b/a the Upholstered Wall Works, Defendant.**

No. 85 C 4181.

United States District Court, N.D. Illinois, E.D.

June 3, 1987.

As Corrected June 26, 1987.

Stuart Smith, Gordon & Glickson, P.C., Jean Marie R. Pechette, Chicago, Ill., for plaintiffs.

Michael Kendall, Lockwood, Alex, Fitz-Gibbon & Cummings, Chicago, Ill., for defendant.

## MEMORANDUM AND ORDER

MORAN, District Judge.

Since this court's first order in this bitterly fought patent and trademark case, *Unique Concepts, Inc. v. Manuel*, 231 U.S. P.Q. 268 (N.D.Ill.1986), [available on WESTLAW, DCT database] plaintiffs (Unique) have changed the basis for the patent aspects of their lawsuit. Both parties deal in devices used to cover walls with decorative fabric. Previously plaintiffs ac-

cused defendant (Manuel) of infringing their U.S. Patent No. 4,018,260, filed April 27, 1976, granted April 19, 1977. On their motion for a preliminary injunction, however, we found some problems with the claim. Construing the claims of the patent broadly enough to find that defendant's product infringed it raised an issue of invalidity for indefiniteness. *See* 35 U.S.C. § 112. A construction which avoided any question of indefiniteness also made a finding of infringement questionable. 231 U.S. P.Q. at 273–275.

Perhaps in response, Unique has subsequently amended its complaint to assert infringement of its U.S. Patent No. 4,197,-686, filed December 5, 1978, granted April 15, 1980. The new claim appears to avoid the construction problems of the old one. Giving the patent a quick glance—but not deciding the question now—it would seem to read literally on the product Manuel has been using. Plaintiffs, at least, are so confident that it does, that they have moved for summary judgment.

### 1. An On-Sale Bar to Patent Validity

Plaintiffs, however, are not yet out of the woods. In addition to resisting infringement, Manuel raises at least six questions going to the validity of the '686 patent. The best supported of these is a contention that the patented device was on sale more than one year prior to the date the application for the '686 patent was filed. If so, the patent is invalid under 35 U.S.C. § 102(b). For purposes of the motion before us, one genuine issue of material fact is enough to defeat Unique's motion for summary judgment. Since Manuel's evidence on this point raises such an issue, we treat only that question.

■ Proof of an on-sale bar varies somewhat depending on the circumstances, but centers on three elements: that the patented invention was reduced to practice and operable; that the invention was embodied in the product offered for sale; and that the invention was on sale for profit rather than experimentation. *J.A. LaPorte, Inc. v. Norfolk Dredging Co.*, 787 F.2d 1577, 1580 (Fed.Cir.), *cert. denied*, 479 U.S. ——,

107 S.Ct. 274, 93 L.Ed.2d 250 (1986); *FMC Corp. v. Hennessy Industries, Inc.*, 650 F.Supp. 688, 691–693 (N.D.Ill.1986). Plaintiff Floyd Baslow invented the product in question. On his own testimony, and on the documentary evidence of his application for a trademark, the first sale of his product took place on or about June 23, 1977, almost eighteen months before the application for what became the '686 patent was filed.

■ Unique counters that the item sold in June 1977 was a different product. That design, it says, was eventually rejected and never went into full-scale production. But the item sold need not have been identical to the eventual production model for its sale to work a statutory bar. *General Electric Co. v. United States*, 228 Ct.Cl. 192, 654 F.2d 55, 58 (1981); *Dart Industries, Inc. v. E.I. DuPont de Nemours & Co.*, 489 F.2d 1359, 1365 (7th Cir.1973), *cert. denied*, 417 U.S. 933, 94 S.Ct. 2645, 41 L.Ed.2d 236 (1974). A "makeshift" model will suffice even though it later received an improvement or two. *Shatterproof Glass Corp. v. Libbey-Owens-Ford Co.*, 758 F.2d 613, 622 (Fed.Cir.), *cert. dismissed*, 474 U.S. 976, 106 S.Ct. 340, 88 L.Ed.2d 326 (1985); *FMC*, 650 F.Supp. at 692. The questions are rather whether the product sold was functional, commercially useful and sufficiently similar to the claimed invention to embody all its essential aspects. *Shatterproof*, 758 F.2d at 622–623; *Dart*, 489 F.2d at 1365. Such issues are questions of fact.

■ Manuel points to evidence indicating a genuine issue on these questions. Engineers' drawings dated July 8, 1977 bear a strong resemblance to the current product. During his deposition, Baslow was asked about the product sold in that first transaction in some detail, using a model of the current product as an illustration. By his testimony, the product he sold in 1977 was essentially the same as the current product in most respects. Baslow now contends that he misspoke, and submits evidence tending to contradict his earlier testimony. But only a trier of fact can resolve such disputes. An issue exists which needs re-

solving. It is material, because Manuel cannot infringe an invalid patent. Unique's motion for summary judgment on count VI of its complaint must be denied.

## 2. Defamation

Unique also moves for summary judgment on counts IV through VII of Manuel's counterclaims. These claims arise out of identical letters about Manuel and his installations which Baslow sent in August 1985 to perhaps as many as fifty of Manuel's customers. The letters included the following sentences:

> This bogus track which Manuel and his company have been installing is approximately 50% heavier than the FABRI–TRAK product and we believe, in our professional opinion, that this increased weight presents a risk of toxicity. In addition, Mr. Manuel has admitted that he has never subjected the heavier product to any testing which is required under the Chicago Building Code ... Two court orders from the Federal Court sitting in Chicago have been issued restraining Mr. Manuel from installing this heavier product, or any other product which infringes the patent on the FA-BRI–TRAK system. These installations to [sic] the heavier non-FABRI–TRAK product, however, have already taken place and may be continuing.

Manuel contends that the letters defamed him, and disparaged his product and his services.

The court orders referred to are the two temporary restraining orders which this court granted early in the course of this lawsuit. No evidence of toxicity was then before us; the orders issued principally on trademark questions. Apparently Baslow's "professional opinion" about increased toxicity was grounded solely on the fact that Manuel's product was heavier, which Baslow determined by weighing it on a postal scale. On the other hand, Manuel did testify that he knew of no tests on the product. Plaintiffs contend that they said nothing that was not true. Manuel argues that the letters were meant to imply that his product was so dangerously toxic that its use

had to be restrained by court orders. He submits affidavits from three customers who read the letter that way.

The defamation claim thus takes us squarely into the realm of Illinois' new "innocent construction rule." *See Owen v. Carr*, 113 Ill.2d 273, 278, 497 N.E.2d 1145, 1148, 100 Ill.Dec. 783, 786 (1986). Some confusion presently exists over the scope and function of the rule. *See, e.g., American International Hospital v. Chicago Tribune Co.*, 136 Ill.App.3d 1019, 1026, 483 N.E.2d 965, 970, 91 Ill.Dec. 479, 484 (1st Dist.1985). However, the most logical and workable reading of the Illinois Supreme Court decisions which have defined the rule, *Fried v. Jacobson*, 99 Ill.2d 24, 28, 457 N.E.2d 392, 394, 75 Ill.Dec. 398, 400 (1983), and *Chapski v. Copley Press*, 92 Ill.2d 344, 352, 442 N.E.2d 195, 199, 65 Ill.Dec. 884, 888 (1982), is that whether a statement can reasonably be given an innocent construction determines whether the plaintiff needs to plead special damages or not. *Nasr v. Connecticut General Life Insurance Co.*, 632 F.Supp. 1024, 1026 (N.D.Ill.1986); *see Owen*, 113 Ill.2d at 277, 497 N.E.2d at 1147, 100 Ill.Dec. at 785.

There are two kinds of defamatory statements for pleading purposes. The first, called defamation *per se*, consists of a statement "so obviously and naturally harmful" that no special damage resulting from its publication need be pled or proven to make it actionable. *Owen*, 113 Ill.2d at 277, 497 N.E.2d at 1147, 100 Ill.Dec. at 785. The second, called defamation *per quod*, consists of all other allegedly defamatory statements. A plaintiff cannot base a claim on one of these unless he can show special damages. *Newell v. Field Enterprises, Inc.*, 91 Ill.App.3d 735, 742, 415 N.E.2d 434, 441, 47 Ill.Dec. 429, 436 (1st Dist.1980). The *Chapski* court held that a statement which reasonably may be innocently interpreted cannot constitute defamation *per se*. 92 Ill.2d at 352, 442 N.E.2d at 199, 65 Ill.Dec. at 888. It also rejected the former rule of *John v. Tribune Co.*, 24 Ill.2d 437, 442, 181 N.E.2d 105, 108, *cert. denied*, 371 U.S. 877, 83 S.Ct. 148, 9 L.Ed.2d 114 (1962), that words capa-

ble of being read innocently must be so read. *Chapski*, 92 Ill.2d at 351, 442 N.E.2d at 198, 65 Ill.Dec. at 887; *Crinkley v. Dow Jones & Co. (Crinkley II)*, 119 Ill.App.3d 147, 151, 456 N.E.2d 138, 141, 74 Ill.Dec. 636, 639 (1st Dist.1983).

■ It follows that a statement capable of two or more interpretations, one innocent and one defamatory, is actionable only through libel *per quod—i.e.*, through pleading and proving special damages. *American International*, 136 Ill.App.3d at 1025, 483 N.E.2d at 970, 91 Ill.Dec. at 484; *Audition Division, Ltd. v. Better Business Bureau of Metropolitan Chicago, Inc.*, 120 Ill.App.3d 254, 257–258, 458 N.E.2d 115, 119, 75 Ill.Dec. 947, 951 (1st Dist.1983). The initial determination of whether an innocent interpretation reasonably exists is a question of law for the court. If both an innocent and a defamatory meaning are possible, then in a *per quod* claim on the statement the determination of which meaning the statement actually had is a question of fact for the jury. *Fried*, 99 Ill.2d at 28, 457 N.E.2d at 395, 75 Ill.Dec. at 401; *Chapski*, 92 Ill.2d at 352, 442 N.E.2d at 199, 65 Ill.Dec. at 888, *citing Troman v. Wood*, 62 Ill.2d 184, 189, 340 N.E.2d 292, 294 (1975) (statement which admits of both a defamatory and a non-defamatory meaning presents a question of fact for the jury); *cf. Saenz v. Playboy Enterprises, Inc.*, 653 F.Supp. 552, 557–558 (N.D.Ill. 1987) (applying similar rule of New Mexico law).

■ This court finds that the statements in the letter reasonably could carry more than one meaning. Under the new rule we consider not only the exact words of the statement, but also the implications they would naturally carry in their context. *Quilici v. Second Amendment Foundation*, 769 F.2d 414, 418 (7th Cir.1985), *cert. denied*, 475 U.S. 1013, 106 S.Ct. 1192, 89 L.Ed.2d 307 (1986); *Owen v. Carr*, 134 Ill.App.3d 855, 860–861, 478 N.E.2d 658, 662, 88 Ill.Dec. 343, 347 (4th Dist.1985), *aff'd*, *Owen*, 113 Ill.2d 273, 497 N.E.2d 1145, 100 Ill.Dec. 783; *Crinkley II*, 119 Ill.App.3d at 152, 456 N.E.2d at 142, 74 Ill.Dec. at 640. The letter places comments about toxicity in juxtaposition with a statement about court orders and does not expressly identify the basis for the court orders. Three customers drew the implication that the court restrained use of the product because it was dangerously toxic. In the context, we cannot say that their reading was unreasonable. Unique apparently wants us to find the implications about toxicity true, since it submits a report from the Center for Fire Research of the National Bureau of Standards which considers the quantity of material a factor in evaluating toxic hazards. However, we cannot find the product more toxic as a matter of law solely because it is heavier. The letter can reasonably be read to impugn Manuel's integrity as a businessman.

However, the letter does hew a line so close to the truth that it can also be read innocently. *See American International*, 136 Ill.App.3d at 1023–1024, 483 N.E.2d at 969, 91 Ill.Dec. at 483 (true statements not subjected to innocent construction analysis since truth is a defense to defamation). Manuel did install track which imitated, but was not, plaintiff's product. *Unique*, 231 U.S.P.Q. at 272 n. 4. He admits that he has never tested the product, so it may not conform to the municipal code. The letter did not squarely say that Manuel's product was more toxic, but rather that its greater weight presented "a risk" of toxicity. Two court orders did issue, and the use of the term "patent" in the same sentence at least gives a hint of what the controversy was actually about. In short, the letter can reasonably be read as merely describing what actually happened. Those events may not all be "innocent" in the usual sense of that word, but that reading is an "innocent construction" for purposes of the Illinois rule.

Since the statements reasonably could be read as either innocent or defamatory, Manuel can only bring a claim for libel *per quod*. He has not. Interestingly, the record contains a hint of special damages in the testimony of the three customers about their attitudes toward Manuel and his product after reading the letter. But Manuel has chosen not to assert those damages,

relying entirely on a characterization of the statements as libel *per se* (defendant's mem. in response to plaintiffs' motion for summary judgment, p. 25). We take him at his word. Plaintiffs are entitled to summary judgment on count IV of Manuel's counterclaim.

### 3. Common Law Commercial Disparagement

■ Manuel's count VII is a tort claim for commercial disparagement under Illinois common law based on the same letter. Such an action arises when the defendant has made a statement which falsely disparages the quality of either the goods plaintiff sells or the services plaintiff performs. *Crinkley v. Dow Jones & Co. (Crinkley I),* 67 Ill.App.3d 869, 876, 385 N.E.2d 714, 719, 24 Ill.Dec. 573, 578 (1st Dist.1978). Manuel argues that Baslow's letter did both.

■ Commercial disparagement is a close relative of defamation. However, this court is not sure that the entire complicated regime of defamation pleading requirements, such as the *per se/per quod* distinction and the innocent construction rule, should carry over intact into a commercial disparagement action. *See, e.g., Pendleton v. Time, Inc.,* 339 Ill.App. 188, 196, 89 N.E.2d 435, 438–439 (1st Dist.1949) (regretting confusion with libel actions and doubting that *per se/per quod* distinctions apply); *Pain Prevention Lab, Inc. v. Electronic Waveforms, Inc.,* 657 F.Supp. 1486, 1494 (N.D.Ill.1987) (noting criticism of a special damages requirement for disparagement actions). The court in *Continental Nut Co. v. Robert L. Berner Co.,* 345 F.2d 395, 398 (7th Cir.1965), *later proceeding,* 393 F.2d 283 (7th Cir.), *cert. denied,* 393 U.S. 923, 89 S.Ct. 254, 21 L.Ed.2d 259 (1968), applied the innocent construction rule to a statement about the moisture content of green Brazil nuts, but the plaintiffs in that case had brought a conventional libel action. However, Manuel has not challenged, and appears to accept, use of the full defamation apparatus on his commercial disparagement claim (defendant's response, p. 30). Thus we need not reach the question.

Manuel's count VII therefore founders for the same reason as in count IV, namely his failure to assert special damages. As there are two kinds of defamatory statements, so there are two kinds of commercially disparaging statements. Statements which accuse a businessman of outright dishonesty or reprehensible business methods in connection with his goods are like defamation *per se.* The plaintiff bringing an action on such statements need not plead special damages since some damage can be presumed. Less extreme statements disparaging the quality of his goods or services may be actionable, but like defamation *per quod* they are actionable only with special damages. *Testing Systems, Inc. v. Magnaflux Corp.,* 251 F.Supp. 286, 291 (E.D.Pa.1966); *Smith-Victor Corp. v. Sylvania Electric Products, Inc.,* 242 F.Supp. 302, 307 (N.D.Ill.1965). Under the principles of construction used in Illinois defamation law, we cannot say that a charge of reprehensible conduct is the only thing which can reasonably be read from the letters. Thus the claim requires special damages and none are asserted.

### 4. Statutory Claims for Deceptive Practices

The absence of special damages does not, however, sink counts V and VI under the Illinois Consumer Fraud and Deceptive Practices Act, Ill.Rev.Stat. ch. 121½ ¶ 261 *et seq.,* and the Uniform Deceptive Trade Practices Act, Ill.Rev.Stat. ch. 121½ ¶ 311 *et seq.* The Deceptive Trade Practices Act provides only for injunctive relief. Ch. 121½ ¶ 313. But ¶ 262 of the Consumer Fraud Act incorporates ¶ 312 from the Deceptive Trade Practices Act, and ¶ 270a of the Consumer Fraud Act provides damages for a violation of ¶ 262. Thus through use of both statutes a plaintiff may obtain both injunctive relief and damages for conduct which infringes ¶ 312. *American Wheel & Engineering Co. v. Dana Molded Products, Inc.,* 132 Ill.App.3d 205, 211, 476 N.E.2d 1291, 1295, 87 Ill.Dec. 299, 303 (1st Dist.1985). Manuel has brought one count under each statute.

The statutory actions offer far more flexibility than do claims for common law commercial disparagement. Any conduct in a business which creates a likelihood of consumer confusion or misunderstanding is potentially actionable. Ill.Rev. Stat. ch. 121½ ¶ 312(12). The apparatus of defamation does not apply; indeed, the statements made need not actually have been false, but only misleading. ¶ 312(8); *American Wheel*, 132 Ill.App.3d at 211, 476 N.E.2d at 1296, 87 Ill.Dec. at 304; *M & W Gear Co. v. A W Dynamometer, Inc.*, 97 Ill.App.3d 904, 913, 424 N.E.2d 356, 364, 53 Ill.Dec. 721, 729 (4th Dist.1981). Most importantly for the case at bar, in an action for disparagement brought under the Deceptive Practices statutes there is no need to plead or prove special damages. Ill.Rev. Stat. ch. 121½ ¶ 313; Prefatory Illinois Note to the Deceptive Trade Practices Act; Illinois Note to ¶ 312(8). In *M & W Gear*, damages were proven through expert testimony, extrapolating lost profits from sales figures before and after the disparaging communication. 97 Ill.App.3d at 909–911, 424 N.E.2d at 362–363, 53 Ill.Dec. at 727–728.

By the standard of the statutory action, Manuel's affidavits from former customers provide ample evidence to survive Unique's motion for summary judgment. The three customers state that they were misled into thinking that the orders issued to prevent a toxic hazard. A trier of fact could find that the letters were misleading on the basis for the orders. The lack of any allegation of special damages is not fatal. Counts V and VI of Manuel's counterclaim remain in this lawsuit.

## CONCLUSION

Plaintiffs' motion for summary judgment is granted as to counts IV and VII of defendant's counterclaim, but denied in all other respects.