**Donald E. HANEY, Plaintiff,**

v.

**TIMESAVERS, INC., a Minnesota corporation, Jeff Terrill Machinery, Inc., an Oregon corporation, Akhurst Machinery, Inc., an Oregon corporation, and Does 1–100, Defendants.**

Civ. No. 93–151–FR.

United States District Court,
D. Oregon.

Nov. 15, 1993.

David A. Fanning, Peter E. Heuser, M.H. Hartwell, Kolisch, Hartwell, Dickinson, McCormack & Heuser, Portland, OR, for plaintiff.

James Campbell, Garth A. Winn, Klarquist, Sparkman, Campbell, Leigh & Whinston, Portland, OR, and Orrin M. Haugen, Eric O. Haugen, Haugen and Nikolai, P.A., Minneapolis, MN, for defendants.

OPINION

FRYE, District Judge:

The matter before the court is the motion of plaintiff for summary judgment on counterclaim II of defendants (#61).

**BACKGROUND**

Plaintiff, Donald E. Haney, brings this action against defendants, Timesavers, Inc., Jeff Terrill Machinery, Inc., and Akhurst Machinery, Inc. (hereafter, Timesavers), alleging willful infringement of U.S. Patent Nos. 5,081,794 and 5,181,342.

Timesavers has brought a counterclaim against Haney alleging a violation of Minn.

Stat. 325D.43 *et seq.* based upon allegations of unfair or deceptive trade practices.

## CONTENTIONS OF THE PARTIES

Haney contends that there are no facts to support the two following allegations of Timesavers: 1) that Haney made false statements to prospective customers of Timesavers; and 2) that Haney disparaged Timesavers' sander by posting a sign at a trade show which contained false statements.

In the alternative to the motion for summary judgment, Haney argues that this court should grant judgment on the pleadings dismissing counterclaim II on the grounds that 1) the claim is preempted by federal law; 2) the relief sought is moot; and 3) Timesavers has not alleged special damages as required by the laws of the State of Minnesota.

Timesavers contends that there are issues of material fact as to whether Haney falsely represented that he had patent rights, thereby misleading customers of Timesavers. Timesavers contends that Haney made false statements to three businesses, Kent Moore Cabinets, North Country Door and Design Craft Door, when he represented that he had patent rights, which did not exist.

In reply, Haney contends that the statements relied upon by Timesavers support his position that he never made any false or misleading statements. Haney explains that "he told people he had a patent pending, that he believed Timesavers would infringe his patent when it was granted and that anyone who used one of Timesavers' infringing sanders would also infringe, all of which was within Haney's right to say." Haney's Reply to Timesaver's Opposition, p. 2.

## UNDISPUTED FACTS

On January 21, 1992, Haney was issued U.S. Patent No. 5,081,794 by the United States Patent Office on an orbital sander. Prior to this date, Haney, or others acting on his behalf, had a number of conversations with representatives of Kent Moore Cabinets, North Country Door and Design Craft Door. These three businesses were purchasers of or potential purchasers of the Haney orbital sander, as well as purchasers of or potential purchasers of an orbital sander manufactured by Timesavers.

Jack Marino, vice president of operations of Kent Moore Cabinets, purchased an orbital sander from Timesavers. In the fall of 1991, Marino discussed the Haney orbital sander with Steve Bruce, a salesman for Haney Industries. Marino testified about his conversations with Bruce as follows:

A. [by Marino] And, after we got back from the show then, we had a conversation and he said something to the effect—I told him we were buying a Timesaver and he said something to the effect that that would be something like an illegal machine that I wouldn't be able to have it. We—something like I guess somebody would come get it. We just couldn't have that kind of machine in here because it was copied.

Exhibit 2 to Timesavers' Memorandum in Opposition, p. 2.

Q. [by attorney] Okay. And one more time perhaps or could you clarify for me just a little bit about what he said with regards to the machine that you had bought and possible consequences of owning such a machine?

A. [by Marino] I remember after the conversation talking to my secretary about the nerve of that guy, you know, to tell me that we were not going to be able to have [the Timesaver] machine. You know, I don't remember the exact words that were exchanged, but that it kind of upset me some that the nerve of that guy to say that, you know, we just weren't going to be able to have it. Like I'm wondering is he going to come up here and pick our machine up? Is he planning on paying for that machine? And if—we felt like we have a—we found the machine to take—to do a job here for us that he'd have the right to come in and take it out. It just—I don't normally run into that type of conversation, so that kind of struck me funny.

*Id.* at 3–4.

Q. Did Steve Bruce ever say that Don Haney or Haney Industries had a patent pending?

A. I don't remember them saying that.

Q. Do you remember them saying they did have a patent?

A. I don't remember. I don't remember. Because it would not have been a normal conversation that I would have had in purchasing a machine.

Exhibit 2 to Declaration of David A. Fanning, p. 4.

Q. During that conversation with Steve Bruce, did you at all believe that the—that his purpose was to either intimidate or discourage you from buying a Timesavers machine?

. . . .

A. I don't think so because we had already made the deal.

Exhibit 7 to Declaration of David A. Fanning, p. 2.

In the fall of 1991, Nathan Cass, half-owner of North Country Door, purchased a Timesavers orbital sander, but talked with Haney or a representative of Haney about the sander made by Haney Industries. Cass testified as follows about the conversations he had with Haney or a representative of Haney:

Q. [by attorney] OK. And what were those conversations about with regard to the Timesavers machine?

A. [by Cass] Well, I told him that we were looking at the Timesavers and we were discussing different things about it. And, of course, he was saying that they either held the patent or was applying for the patent. I can't say whether he said we actually have the patent, but the word "patent" came up and the fact Timesavers was copying their machine. I didn't feel as though they were. And I told him, you know, that Timesavers worked, theirs didn't. And, you know, we discussed that for a while. One of the things that came up in the conversation was the fact that Haney was going to bring a suit against Timesavers for infringing on their patent. I guess the only thing that the salesman said to me that I really didn't like was the fact that it was going to be a shame that the people that bought these Timesavers weren't going to be able to operate them, meaning that the court order would be issued because of the stealing of the patent, and the court order would say we couldn't run our machine. And I guess my words to him was "It had to be a pretty good sized fellow to come in here and tell me not to operate it, run it, because we were going to continue to operate it."

Exhibit 3 to Timesavers' Memorandum in Opposition, pp. 2–3.

Q. Now, did Haney tell you he had patent rights existing or a pending patent?

A. Like I said before, I don't know if he said he had the patent or a patent pending, but there was no doubt that Timesavers had stolen his idea and his patent.

Q. OK. So Haney believed that Timesavers had stolen its idea or its machine?

A. Absolutely.

Q. OK. But did Haney ever say that the government or he had enforceable rights at that time?

A. Not at that time.

Exhibit 3 to Declaration of David A. Fanning, p. 5.

Dave Nelson, the owner of Design Craft Door, had a conversation with Haney and his sales representative about woodworking machinery in late 1991. Nelson states in his declaration that:

A. Donald Haney informed me that he was going to sue Timesavers for patent infringement, and there was no indication given that Haney did not have the present right to sue Timesavers for patent infringement. It was my belief based upon the information conveyed [ ] that he, Donald Haney, had presently held rights in his supposed invention.

B. At that time (1991) I was informed that if I purchased a Timesavers' O/B Sander and if he, Haney, prevailed in his suit, one or more of the following would likely arise:

1. That I would potentially have to pay him, Haney, money;

2. That Timesavers would not be able to service my "O/B" machine; and

3. That I would have to return the machine.

Declaration of Dave Nelson, p. 2.

On August 21–24, 1993, at the International Woodworking Machinery and Furniture Supply Fair in Atlanta, Georgia, Haney posted a sign, which stated as follows:

### NOTICE

On January 21, 1992 the U.S. Patent and Trademark office awarded Donald E. Haney Patent No. 5,081,794 for a new conveyor feed orbital. Don's sander is primarily used to remove cross-grain scratches from wood products. Don first introduced the sander called the Finale at the 1990 IWF Fair in Atlanta.

During that fair the upper management of Timesavers, Inc. politely asked Don to show them the Finale which he did. At that time Timesavers offered their cross-belt orbital sander. Several months later however, Timesavers began making what Don believes to be copies of the Finale.

Don has always considered Timesavers a fine company so he was quite surprised by Timesavers actions. To protect this patent and to stop what he believes to be willful patent infringement, Don filed a lawsuit on March 6, 1992 against Timesavers for patent infringement. Don expects justice from the courts for each and every infringing sander that Timesavers has made, used or sold.

A copy of Don's patent is available for anyone to review.

Exhibit A to Declaration of Harold Kapaun.

### APPLICABLE STANDARD

Summary judgment is appropriate where "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The initial burden is on the moving party to point out the absence of any genuine issue of material fact.

Once the initial burden of the moving party is satisfied, the burden shifts to the opponent to demonstrate through the production of probative evidence that there remains an issue of fact to be tried. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The non-moving party must make a sufficient showing on all essential elements of the case with respect to which the non-moving party has the burden of proof. *Id.*

The decision faced by the court is essentially the same decision faced by a court on a motion for a directed verdict—that is, whether the evidence on the motion for summary judgment presents a sufficient disagreement to require submission to a jury, or whether it is so one-sided that one party must prevail as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). If reasonable minds could differ as to the conclusions drawn from the evidence in the record, the motion for summary judgment should be denied. *Id.*

### APPLICABLE LAW

Timesavers contends that Haney or his representative told prospective and existing customers of Timesavers that Haney had patent rights pertinent to the Timesavers' machine long before such rights existed in violation of Minn.Stat. 325D.44, which states:

A person engages in a deceptive trade practice when, in the course of business, vocation, or occupation, the person:

. . . .

(2) causes likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods or services;

(3) causes likelihood of confusion or of misunderstanding as to affiliation, connection, or association with, or certification by, another;

. . . .

(5) represents that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that the person does not have;

. . . .

(7) represents that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another;

(8) disparages the goods, services, or business of another by false or misleading representation of fact;

. . . .

(13) engages in any other conduct which similarly creates a likelihood of confusion or of misunderstanding.

Minn.Stat. 325D.44.

### ANALYSIS

Haney argues that the statements he made were literally true, and therefore cannot form the basis for Timesavers' claims for unfair or deceptive trade practices. Timesavers argues that the statements made by Haney to customers and the sign that Haney displayed at the trade show contain language which is false, misleading and deceptive. Timesavers further argues that even if the statements made by Haney were literally true, the statements were misleading and confusing, and misleading and confusing information is actionable.

In *Unique Concepts, Inc. v. Manuel,* 669 F.Supp. 185, 191 (N.D.Ill.1987), the court stated that:

> The statutory actions offer far more flexibility than do claims for common law commercial disparagement. Any conduct in a business which creates a likelihood of consumer confusion or misunderstanding is potentially actionable. Ill.Rev.Stat. ch. 121½ ¶ 312(12).... [I]ndeed the statements made need not actually have been false, but only misleading.

On the other hand, as stated in *Waco–Porter Corp. v. Tubular Structures Corp. of Am.,* 220 F.Supp. 724, 725 (S.D.Cal.1963), "anyone has the right to inform the trade truthfully about a court action he has brought against another and to state that in his complaint in the action he has charged the other with infringement."

The issue before the court is whether a reasonable trier of fact could find by a preponderance of the evidence that Haney engaged in conduct which created the likelihood of confusion or misunderstanding as to the true nature of the product at issue. The court has examined the record and the arguments of the parties carefully and finds that Haney has carried his burden of demonstrating that there is an absence of any genuine issue of material fact and that he is entitled to summary judgment on Timesavers' counterclaim II.

### CONCLUSION

Haney's motion for summary judgment on defendants' counterclaim II (#61) is granted.