OPINION
{¶ 1} Appellants, George A. Young ("George Young") and Maribel Young, appeal from the February 17, 2006 judgment entry of the Lake County Court of Common Pleas, dismissing the action after a jury verdict in favor of appellees, Richard Russ ("Russ"), Timothy White ("White"), Gannett Co., Inc. ("Gannett Co."), and WKYC-TV3. *Page 2 
 {¶ 2} On May 31, 2002, appellants filed a complaint for defamation against appellees Russ, White, and Gannett Co. Appellees Russ, White, and Gannett Co. filed an answer on July 3, 2002.[1] On July 12, 2002, appellants filed a motion, pursuant to Civ.R. 15(A), for leave to amend their complaint to join appellee WKYC-TV3 as a new party defendant, which was granted by the trial court on August 12, 2002. Appellees Russ, White, Gannett Co., and WKYC-TV3 filed an answer to appellants' amended complaint on September 27, 2002.
 {¶ 3} On April 11, 2003, appellees Russ and WKYC-TV3 filed a joint motion for summary judgment pursuant to Civ.R. 56, and appellees White and Gannett Co. filed separate motions for summary judgment.[2] On May 7, 2003, appellants filed memoranda in opposition to appellees' motions for summary judgment, and appellees filed replies on May 16, 2003.
 {¶ 4} Pursuant to its November 7, 2003 judgment entry, the trial court granted each of appellees' motions for summary judgment, as well as appellee Gannett Co.'s motion for attorney fees.[3] Appellants filed a timely notice of appeal with this court, asserting the following assignments of error:
 {¶ 5} "[1.] The trial court erred to the prejudice of [appellants] in awarding summary judgment to [appellees Russ] and [WKYC-TV3]. *Page 3 
 {¶ 6} "[2.] The trial court erred in granting summary judgment in favor of [appellee White].
 {¶ 7} "[3.] The trial court erred in granting summary judgment to [appellee] Gannett Co.
 {¶ 8} "[4.] The trial court erred in its decision to award attorneys fees to [appellee] Gannett Co. under R.C. 2323.51 without either a hearing or a motion."
 {¶ 9} On June 30, 2005, in Young v. Russ, 11th Dist. No. 2003-L-206,2005-Ohio-3397 ("first appeal"), this court determined that appellants' first and fourth assignments of error had merit, and appellants' second and third assignments of error were not well-taken. Thus, this court affirmed in part, reversed in part, and remanded the matter to the trial court.
 {¶ 10} A jury trial commenced on February 6, 2006, against appellees Russ and WKYC-TV3. The following factual background was taken from appellants' first appeal as well as from the jury trial.
 {¶ 11} Appellant George Young was employed by the Painesville City Board of Education ("PCBOE") as head custodian/lunchroom monitor for Huntington Elementary School ("Huntington"). According to appellant George Young, on February 7, 2002, during lunch at Huntington, a group of girl students reported that Ignacio Rios ("Rios"), a fourth grader, called them names. He observed Rios move from one table to another which was against the rules. He indicated that he told Rios several times to go to a detention table, but Rios refused. Appellant George Young stated that he removed Rios from his seat, at which time Rios violently kicked, punched, and yelled obscenities. He ultimately removed Rios from the cafeteria and was instructed by Huntington's principal, *Page 4 
Judith Poluga ("Poluga"), to take Rios to her office. He said that although Rios continued to fight and struggle, he never hit, choked, or in any manner hurt Rios.
 {¶ 12} Karen Davis ("Davis"), a lunchroom monitor, testified that Rios was out of control. Davis stated that appellant George Young did not have his hands around Rios' neck.
 {¶ 13} On February 14, 2002, another incident occurred in Huntington's cafeteria involving kindergartners and cousins, Cameron Kreiner ("Kreiner") and Boyd Miller ("Miller"). Appellant George Young observed Kreiner and Miller fighting, and indicated that Kreiner put his hands around Miller's neck. He stated that he told Kreiner to stop, picked him up, and sat him down in his chair.
 {¶ 14} On or about February 15, 2002, appellee WKYC-TV3 received a call from Stephanie Miller, the mother of Miller and aunt of Kreiner, claiming that appellant George Young was manhandling students. Appellee WKYC-TV3 also got a call from Warren Schroeder who expressed concerns that his daughter, Ashley Schroeder, a student at Huntington, was afraid to go to school because she felt fearful and intimidated by appellant George Young.
 {¶ 15} Appellee WKYC-TV3 assigned the potential story to reporter appellee Russ to investigate. Later that day, appellee Russ traveled to Painesville to interview and shoot footage of Stephanie Miller. Specifically, appellee Russ taped Stephanie Miller making statements about appellant George Young to the effect that he has manhandled children and that kids are afraid to go to school because of him. Stephanie Miller also told appellee Russ about the alleged altercation that occurred between Miller, Kreiner, and appellant George Young. *Page 5 
 {¶ 16} Appellee Russ went to the Kreiner residence and interviewed Kreiner, his parents, and his brother, Kyle, on camera. According to appellee Russ, Kreiner claimed that he was choked by appellant George Young when he picked him up then plopped him down for talking during lunch. Kyle, who was also present in the cafeteria on the day at issue, recounted a similar version of Kreiner's alleged incident with appellant George Young.
 {¶ 17} Appellee Russ then traveled to the PCBOE to speak with Superintendent Michael Hanlon ("Hanlon") and Assistant Superintendent James Fodor ("Fodor") who indicated that they were not aware of the Kreiner incident but that they would get to the bottom of it.
 {¶ 18} On February 18, 2002, appellee Russ became aware of the incident involving appellant George Young and Rios. Appellee Russ and a cameraman went to Rios' home and interviewed Rios and his mother on camera. Rios indicated that appellant George Young lifted him up by the neck and threw him on the stage. He stated that his neck was very red from the incident.
 {¶ 19} During the next few days, appellee Russ interviewed several other Huntington students, including Ashley Schroeder, a classmate of Rios' who was present in the cafeteria during the incident. Ashley Schroeder corroborated Rios' version of the events with respect to appellant George Young's behavior.
 {¶ 20} On February 20 or 21, 2002, appellee Russ met with Poluga, Hanlon, and Fodor, and was told that the district as well as the police were investigating the matter.[4] According to Poluga and Fodor, two meetings occurred on February 21, 2002, between *Page 6 
the school officials and appellee Russ. The first meeting occurred in the morning between Hanlon, Fodor, and appellee Russ, and the second took place in the afternoon, among the three and Poluga. According to Russ and Hanlon, the meeting took place on February 20, 2002.
 {¶ 21} Also, on February 21, 2002, Rios' mother filed a criminal complaint and Officer John Levicki ("Officer Levicki") with the Painesville City Police Department ("PCPD") was assigned to investigate. Officer Levicki traveled to Rios' home to interview his mother, then went to Huntington to interview Rios in the presence of Poluga. Poluga stated that the interview occurred prior to the second meeting with appellee Russ, Hanlon, Fodor, and herself, during the afternoon on February 21, 2002. Officer Levicki stated that Rios recanted his story and said that appellant George Young did not grab his throat. Officer Levicki indicated that Rios admitted that he made up the story to avoid getting in trouble for swearing and other misbehaviors. Officer Levicki advised Poluga that he would complete the investigation and was not filing charges. According to Poluga, she informed appellee Russ that Rios recanted his allegations regarding appellant George Young at the second meeting that afternoon.
 {¶ 22} Prior to the first broadcast on February 21, 2002, appellee Russ went to appellant George Young's home and interviewed him off-camera. He indicated that appellant George Young denied hurting any children.
 {¶ 23} Also, before the first broadcast, Hanlon sent a letter home with students that the school district was investigating allegations that appellant George Young was involved in incidents using force on students and that he would be reassigned to a position that did not involve direct contact with students. Later that afternoon, *Page 7 
Stephanie Miller faxed the letter from Hanlon to appellee Russ. At that time, appellee Russ, along with the management at appellee WKYC-TV3, decided to air the story later that night on the 11:00 p.m. news. Before airing the story, appellee Russ' colleague, Lydia Esparra, interviewed Hanlon on-camera regarding the district's investigation.
 {¶ 24} During the first broadcast, anchorman appellee White introduced appellee Russ and the story, which included comments that some students were afraid to go to school because of appellant George Young, and that he had threatened and became physical with students. Appellee Russ, who wrote the scripts for both broadcasts, described the incidents involving Kreiner and Rios and the alleged physical contact by appellant George Young. In addition, footage was included of Hanlon who stated that the safety of the students is paramount and that the district hopes to get answers in a few days. Appellee Russ also included that appellant George Young denied the allegations.
 {¶ 25} On February 22, 2002, appellee Russ was contacted by Kreiner's father. Appellee Russ met the Kreiners at the PCPD where they filed a police report. Officer Levicki denied appellee Russ and his cameraman access to his office. During the next several days, Officer Levicki investigated both Kreiner's and Rios' complaints and ultimately determined that charges would not be filed against appellant George Young due to lack of evidence of any crime. Rios' investigation was completed on February 26, 2002, and Kreiner's investigation was completed on February 28, 2002.
 {¶ 26} Prior to the completion of the investigations, a second broadcast aired at 6:00 p.m. on February 22, 2002. In that broadcast, appellee Russ focused on Kreiner's criminal complaint and the occurrence at the police station. Appellee Russ indicated *Page 8 
that Kreiner's father was "steamed" about the allegations that appellant George Young physically disciplined his son. Appellee Russ included appellant George Young's side of the story and his denial of the allegations.
 {¶ 27} About one month later, around March 18, 2002, appellee Russ received a copy of another letter sent by Hanlon to parents in the school district. The letter discussed the investigation and the determination that appellant George Young was not found to be engaged in any unlawful or excessive behavior. The letter noted that appellant George Young was reinstated to his prior duties. This updated information was never broadcast by appellee WKYC-TV3.
 {¶ 28} Following the trial, the jury returned a unanimous verdict in favor of appellees Russ and WKYC-TV3. Pursuant to its February 17, 2006 judgment entry, the trial court dismissed the action in favor of appellees. It is from that judgment that appellants filed a timely notice of appeal and make the following assignments of error:
 {¶ 29} "[1.] The Jury's Answer to Jury Interrogatory No. 1 was against the Manifest Weight of the Evidence and requires a New Trial[.]
 {¶ 30} "[2.] Trial Court Erred in Excluding Evidence of [appellees'] March 18, 2002 Note and Follow Up Story about [appellant George Young] being Exonerated by the Police and School District of Any Wrongdoing.
 {¶ 31} "[3.] The Trial Court Erred in Excluding [appellees'] Admission that the Physical Abuse Claims of [Rios] and [Kreiner] were Not True.
 {¶ 32} "[4.] The Trial Court Erred in Failing to Rule that [appellees'] Defamatory Broadcasts Accusing [appellant George Young] of Abusing Children were Libel Per Se and as such Damages and Actual Malice are Presumed. *Page 9 
 {¶ 33} "[5.] The Trial Court Erred in Admitting Two Painesville City Local School's Interoffice Memorandums of April 11, 2002 and June 25, 2002.
 {¶ 34} "[6.] Trial Court Erred in its Limiting and Final Jury Instructions Concerning the Radio-Television News Directors Association ("RTNDA") Code of Ethics and Professional Conduct."
 {¶ 35} In their first assignment of error, appellants argue that the jury's answer to jury interrogatory number one was against the manifest weight of the evidence which requires a new trial. They allege that appellees knew the allegations of child abuse were false, due to the fact that Rios recanted his statement of physical abuse, and Kreiner gave four different versions of the incident.
 {¶ 36} When the claim is that the jury verdict is against the manifest weight of the evidence, a reviewing court must examine the entire record to determine if the verdict is supported by some competent, credible evidence. CE. Morris Co. v. Foley Construction Co. (1978),54 Ohio St.2d 279, syllabus. An appellate court will not overturn a verdict supported by competent, credible evidence. Seasons Coal Co. v. Cleveland (1984),10 Ohio St.3d 77, 80.
 {¶ 37} In the case at bar, jury interrogatory number one provides: "Do you find by a preponderance of the evidence that defendants' statements about George Young in the February 21 and February 22, 2002 television broadcasts were false?" The jurors' answer was "No." The jury was instructed that "[i]f the answer to Interrogatory Number 1 is yes, continue to Interrogatory Number 2. If the answer to Interrogatory Number 1 is no, stop your deliberations, complete the verdict form for the Defendants Richard Russ and WKYC-TV3 and return to the courtroom." *Page 10 
 {¶ 38} The trial court instructed the jury, without objection from appellants, that "[w]hether the broadcasts contained defamatory statements should be determined in reference to the story as a whole. * * *[.]" Taken as a whole, appellees' broadcasts were substantially true. "* * * [I]t is not necessary to prove the literal truth of an accusation in every detail. It is sufficient to prove that the imputation is substantially true, or as it is often put, to justify the `gist', the `sting', or the substantial truth of the defamation." Horvath v.Meyer (Mar. 8, 1982), 11th Dist. No. CA-8-175, 1982 Ohio App. LEXIS 15776, at 14.[5]
 {¶ 39} Here, the broadcasts accurately represented the testimony from the jury trial; specifically, that appellant George Young was involved in physical incidents with two students at Huntington, complaints ensued from parents which brought about an investigation, and as of the date of the broadcasts, there was no concrete answer regarding whether appellant George Young used unreasonable force on the students. The videotape of the broadcasts merely revealed allegations, not conclusions. The jury reviewed all of the evidence, including the broadcasts, and made the factual determination that, taken as a whole, the "gist" of the news stories was truthful. Appellant George Young admitted that he was involved in physical incidents with both Rios and Kreiner. *Page 11 
 {¶ 40} With respect to the incident involving Rios, Davis indicated that Rios was out of control and that it was a fairly rough encounter. Although Rios later recanted his story, the majority of his statements made on the broadcasts are consistent with what he told Officer Levicki. The videotape does not include any statement by Rios that he was choked. Rather, the broadcasts revealed Rios' claim that his neck was red from appellant George Young placing his hands on or around his neck, which appellant George Young admitted.
 {¶ 41} Regarding the Kreiner incident, although the children's descriptions involved minor discrepancies, they are substantially accurate. According to Officer Levicki, all of the children's statements were consistent in claiming that appellant George Young came from behind and placed his hands on Kreiner, which appellant George Young admitted.
 {¶ 42} The jury was instructed to ignore any minor inaccuracies with respect to the two incidents. As such, the jury properly determined that the broadcasts were substantially truthful. Our examination of the entire record leads us to conclude that the verdict is supported by competent, credible evidence. The jury did not clearly lose its way in determining that the broadcasts were not false. Here, the jury chose to believe the testimony of appellees' witnesses and the evidence presented.
 {¶ 43} Appellants' first assignment of error is without merit.
 {¶ 44} In their second assignment of error, appellants contend that the trial court erred by excluding evidence of appellees' March 18, 2002 note and follow up story about appellant George Young being exonerated by the police and school district of any wrongdoing. Appellants allege that because appellees testified that the follow up story *Page 12 
was part and parcel of the original story and that it completed the original story, it is relevant to the issues concerning whether appellee used reasonable care in their investigation of the truth and actual malice, and should have been admitted into evidence.
 {¶ 45} Evid.R. 401 states: "`[r]elevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."
 {¶ 46} With respect to defamation involving public officials and/or figures as opposed to private persons, the Supreme Court of Ohio inEmbers Supper Club, Inc. v. Scripps-Howard Broadcasting Co. (1984),9 Ohio St.3d 22, 24, stated:
 {¶ 47} "[i]n New York Times Co. v. Sullivan [(1964), 376 U.S. 254], the United States Supreme Court held that a `public official' could not maintain a suit for defamation without showing by clear and convincing evidence that the publisher acted with actual malice. In CurtisPublishing Co. v. Butts [(1967), 388 U.S. 130], the court extended the actual malice standard to `public figures.' This standard was further expanded in 1971 when the Supreme Court decided the case ofRosenbloom v. Metromedia, Inc. (1971), 403 U.S. 29. InRosenbloom, the court, in a plurality opinion, extended the actual malice standard to private individuals where the matter reported was of concern to the public."
 {¶ 48} The court in Embers, supra, at 25, held that the negligence standard of review is appropriate when dealing with cases involving defamation of private persons.
 {¶ 49} In the case at bar, appellant George Young is a private person. However, as we will address further in appellants' fourth assignment of error, the trial court *Page 13 
determined at the jury trial that the matter was an issue of public concern. Therefore, the malice standard is appropriate.
 {¶ 50} In the instant matter, the verdict was based solely on the jury's finding that the statements in the broadcasts were not false. The jury did not determine the issue of malice. However, we note that appellees' actions or inactions after the broadcasts are irrelevant to a determination of malice. See Rountree v. WBNS TV, Inc. (Nov. 23, 1999), 10th Dist. No. 98AP-1649, 1999 Ohio App. LEXIS 5533, at 19, ("[a]ction or inaction after the fact has no relevance to whether [the appellee] possessed malice at the time the statement was aired.") Although a follow-up story would have added completion to the story, information acquired after the publication is not relevant to the publisher's state of mind at the time of publication.
 {¶ 51} Appellants' second assignment of error is without merit.
 {¶ 52} In their third assignment of error, appellants maintain that the trial court erred by excluding appellees' admission that the physical abuse claims of Rios and Kreiner were not true. Appellants allege that appellee Russ' March 18, 2002 note that appellant George Young did not violate the law or school guidelines was an admission that the broadcasts were false and should have been admitted.
 {¶ 53} Appellee Russ' March 18, 2002 note states:
 {¶ 54} "A letter went out to Painesville parents Thursday/Friday saying Mr. Young is being reinstated as the school district . . . as the school district and police investigation say he did not violate a law or internal guidelines in his disciplining of the children in the lunchroom. One other investigation by Children's Services is not complete. Mr. Young is back to work, but the district has taken some steps to ensure uniformity of *Page 14 
enforcement and the protection of the children. We will probably run a followup story on the progress of this case today."
 {¶ 55} We stress that the foregoing note was made almost a monthafter the broadcasts. The note does not establish an "admission" that the broadcasts were false. Nothing in the note supports appellants' contention that appellees had knowledge that the stories were false at the time of the broadcasts. As of February 21 and 22, 2002, the story dealing with appellant George Young was still "ongoing," and appellees reported it as such. The PCPD and PCBOE did not complete their investigations until after the broadcasts. Thus, the omission of the information contained in appellee Russ' note could not make the broadcasts false since it did not exist until after the broadcasts. This subsequent information does not amount to an admission that appellees' broadcasts were false. Also, the fact that appellees did not run a follow-up story does not prove that the broadcasts were false.
 {¶ 56} Appellants' third assignment of error is without merit.
 {¶ 57} In their fourth assignment of error, appellants contend that the trial court erred in failing to rule that appellees' broadcasts constituted libel per se, and as such damages and actual malice are presumed.
 {¶ 58} There are two forms of defamation: libel or slander. Generally, slander refers to spoken defamatory words and libel refers to written defamatory words. Retterer v. Whirlpool Corp. (1996),111 Ohio App.3d 847, 857. However, 3 Restatement of the Law 2d, Torts (1977) 182, Section 568A provides that a defamatory matter broadcast by means of radio or television is classified as libel. Holley v. WBNS 10TV,Inc., 149 Ohio App.3d 22, 2002-Ohio-4315, at ¶ 29. See Perez v.Scripps-Howard Broadcasting Co. *Page 15 
(1988), 35 Ohio St. 3d 215.
 {¶ 59} In differentiating between libel per se and libel per quod, this court stated in Jacobs v. Budak, 156 Ohio App.3d 160,2004-Ohio-522, at ¶ 77-79:
 {¶ 60} "[i]n Becker v. Toulmin (1956), 165 Ohio St. 549, 556 * * *, the Supreme Court of Ohio explained that `libel per se means libel of itself, or upon the face of a publication, whereas libel per quod is libel by an interpretation, through an innuendo, between an innocent or harmless meaning and a libelous one.' See, also, Shifflet v. ThomsonNewspapers, Inc. (1982), 69 Ohio St.2d 179, 186 * * *.
 {¶ 61} "This distinction is relevant due to its effect upon the type of damages a plaintiff must prove resulted from the libel. Libel per quod is not actionable absent proof of special damages.Shifflet at 186. `Special damages are those occasioned by the special character, condition, or circumstance of the person wronged. They are not presumed by the injury. They must be specially pleaded and must be proved by competent evidence.' Robb v. Lincoln Publ. (1996),114 Ohio App.3d 595, 622 * * *.
 {¶ 62} "On the other hand, statements that are libelous per se presume the existence of damages and, thus, a plaintiff would not be required to plead and prove special damages. Gosden [v. Louis (1996),116 Ohio App.3d 195,] * * * 208. Specifically, `written matter is libelous perse if, on its face, it reflects upon a person's character in a manner that will cause him to be ridiculed, hated, or held in contempt; or in a manner that will injure him in his trade or profession.' Gosden at 207, citing Becker at 553. `When a writing is not ambiguous, the question of whether it is libelous per se is for the court.' Gosden at 207." [Parallel citation omitted.]
 {¶ 63} In the instant case, again, the jury did not consider the issues of actual *Page 16 
malice and presumed damages since it determined that the broadcasts were not false. A statement cannot be defamatory if it is true.Shifflet, supra, at 183. Appellants misrepresent the record by indicating in their brief that the trial court mistakenly ruled that libel per se did not exist in Ohio after the United States Supreme Court case of Gertz v. Welch (1974), 418 U.S. 323.
 {¶ 64} Rather, the trial court determined that if appellants fulfilled the requisite elements of defamation, appellees' statements would be classified as libel per se. The trial court properly indicated that this "per se" classification no longer results in a finding of presumed actual malice or damages in light of Gertz. The United States Supreme Court held that "[t]he States * * * may not permit recovery of presumed or punitive damages when liability is not based on knowledge of falsity or reckless disregard for the truth, and the private defamation plaintiff who establishes liability under a less demanding standard than theNew York Times test may recover compensation only for actual injury." Id. at paragraph two of the syllabus; see, also, Horvath, supra, at 19, quoting Thomas H. Maloney Sons, Inc. v. E.W. Scripps Co. (1974), 43 Ohio App.2d 105 ("`[consistent with Gertz * * * a private individual bringing a libel suit based upon a publication which is defamatory on its face may no longer rely upon the presumption of general damages or the presumption of malice heretofore permitted under the doctrine of libel per se.'")
 {¶ 65} Here, appellees' broadcasts did not fit within the narrow private issue exception to the Gertz rule. The trial court properly determined that this matter involved an issue of public concern, due to the fact that appellant George Young was a public school employee, and the incidents occurred on public school grounds, involved public *Page 17 
students, and were investigated by the public school district as well as the local police department.
 {¶ 66} Appellants' fourth assignment of error is without merit.
 {¶ 67} In their fifth assignment of error, appellants allege that the trial court erred in admitting two school interoffice memoranda of April 11, 2002, and June 25, 2002. Appellants stress that the memoranda are prejudicial and irrelevant since they were written after the defamatory broadcasts. As such, appellants maintain that the memoranda were inadmissible pursuant to Evid.R. 407.
 {¶ 68} Evid.R. 407 provides: "[w]hen, after an injury or harm allegedly caused by an event, measures are taken which, if taken previously, would have made the injury or harm less likely to occur, evidence of the subsequent measures is not admissible to prove negligence or culpable conduct in connection with the event. This rule does not require the exclusion of evidence of subsequent measures when offered for another purpose, such as proving ownership, control, or feasibility of precautionary measures, if controverted, or impeachment."
 {¶ 69} Here, in the April 11, 2002 interoffice memorandum, titled "Clarification on Use of Reasonable Force," Hanlon specifically indicated the following, in part, to appellant George Young:
 {¶ 70} "This memo is being issued pursuant to our recent meeting concerning parental complaints regarding your use of physical force to restrain two students * * *. As we discussed, the use of physical force is permissible under district guidelines when threats to safety of person or property exist. * * *
 {¶ 71} "As a result of these complaints, the following actions will occur: *Page 18 
 {¶ 72} "1. Mrs. Poluga is reviewing the schedule and staffing levels for cafeteria supervision, and additional personnel will be assigned to ensure adequate supervision of the students.
 {¶ 73} "2. You will participate in small group and individual training concerning supervision responsibilities in the cafeteria including techniques for effectively interacting with students and district guideline 5630B Use of Reasonable Force.
 {¶ 74} "In the future, you are advised that routine supervision of students may be required as a component of your job responsibilities. However, it is critical that any situation where a student does not comply with reasonable requests, and the student's behavior is not an immediate threat of personal injury or property damage, be reported to the Principal/designee for resolution.
 {¶ 75} "It is noted that you have not received any prior complaints of this type during your seven years of employment with the Painesville City Local Schools. It is recommended that in the future that you continue to have close communication with Mrs. Poluga on this issue to ensure proper application of the guideline."
 {¶ 76} Appellant George Young signed the memorandum at the bottom and dated it April 15, 2002.
 {¶ 77} The June 25, 2002 interoffice memorandum, from Hanlon to the Board Personnel Committee, stated the following, in part:
 {¶ 78} "WHAT DID OUR INVESTIGATION SHOW?
 {¶ 79} "PPD and Dept. of Jobs and Family Services reports show no criminal wrongdoing.
 {¶ 80} "The use of physical restraint did occur in two situations at the school *Page 19 
based on eyewitness reports from students and other personnel, and were considered judgment decisions given the situations at hand.
 {¶ 81} "Mr. Young has not had any reported incidents of this type during previous 7 years of employment with PCLS.
 {¶ 82} "The incidents have caused us to review staffing assignments and to provide additional training to personnel in supervisory capacities.
 {¶ 83} "The reported `harsh' disciplinary code is actually comprised of rules and expectations in the cafeteria that are common sense expectations that are reasonable. There appears to be no basis for the use of the term `harsh' when considering the rules.
 {¶ 84} "It does not appear that the custodian applied rules different than those outlined in the disciplinary code in the school.
 {¶ 85} "MITIGATING FACTORS
 {¶ 86} "Was Mr. Young [ever] trained in the guideline? No evidence.
 {¶ 87} "Did Mr. Young participate in training to work with students? Yes.
 {¶ 88} "Were staffing patterns appropriate? It appears that Mr. Young's role evolved over time putting him in a position that was not considered desirable for supervision by the district's administration.
 {¶ 89} "RECOMMENDED RESPONSE
 {¶ 90} "Letter of correction to Mr. Young clarifying the district's position of AG#5631B and the use of restraint.
 {¶ 91} "Reassignment to Huntington elementary (original position) with a phase in to appropriate levels of student supervision responsibility.
 {¶ 92} "Personal training for Mr. Young pursuant to AG#5631 B. *Page 20 
 {¶ 93} "Generalized training to all employees in supervisory capacity in March and April 2002.
 {¶ 94} "Formation of a meeting with the Huntington Principal (parents, students, staff) to provide feedback on rules and expectations in cafeteria.
 {¶ 95} "Employment of additional part time cafeteria monitor to ensure an appropriate transition period.
 {¶ 96} "In the future, the parents of any child involved in the application of AG#5631b will be informed of the situation giving rise to the use of restraint.
 {¶ 97} "Special Board of Education meeting to present report from the Superintendent on the investigation."
 {¶ 98} The foregoing memoranda are relevant because they concern appellant George Young's use of force, a fact that is of consequence to the instant matter. See Evid.R. 401. Both memoranda clearly detailed what resulted from the investigation. Evid.R. 407 is inapplicable since the school district was not the party on trial. The memoranda were not admitted to prove the school district's "negligence or culpable conduct in connection with the event." Evid.R. 407.
 {¶ 99} Appellants' fifth assignment of error is without merit.
 {¶ 100} In their sixth assignment of error, appellants argue that the trial court erred in its limiting and final jury instructions concerning the RTNDA Code of Ethics and Professional Conduct ("Code").
 {¶ 101} Specifically, appellants claim that the following portion was contradictory, confusing, misleading, and prejudicial to their case:
 {¶ 102} "These guidelines were not promulgated or mandated by any *Page 21 
governmental agency, and there is no binding legal effect to the guidelines with respect to establishing what ordinary care means under the circumstances in this case."
 {¶ 103} We note that appellants failed to include in their brief the rest of the trial court's instruction, which indicated the following:
 {¶ 104} "Certain aspects of ordinary care may be contained within the guidelines, and the guidelines may contain standards that exceed ordinary care or that are below ordinary care. It is solely your province to determine what the standard of ordinary care means under the circumstances in this case. Ordinary care, as you determine it to be, may require more care or less care than that degree of care contained in the guidelines."
 {¶ 105} The RTNDA Code is not relevant to the issue of truth or falsity, the central issue here. Appellants' own expert, Kent S. Collins, acknowledged that the RTNDA is a voluntary organization and the Code contains mere guidelines without the binding effect of law. The trial court properly advised the jury that appellees were not legally bound by those guidelines. The trial court clearly indicated to the jury that it was free to consider the RTNDA Code, with respect to determining whether appellees exercised ordinary care. We do not agree with appellants' contention that the trial court's instruction combined a correct rule and an incorrect rule.
 {¶ 106} We are mindful and have considered the arguments of appellant as to the detrimental effect that media coverage has upon those private citizens who find themselves, rightly or wrongly at the center of a developing news worthy conflict or story. However, we are bound by prior precedent and we note that based on the facts presented, appellees exercised ordinary care in the preparation of the stories which *Page 22 
were broadcasted on February 21 and 22, 2002. If we were "to impose any higher obligation upon news reporters and publishers * * * we would be depriving the general public of news to which they are entitled and to place intolerable burdens and costs upon a publisher." Horvath, supra, at 27.
 {¶ 107} Appellants' sixth assignment of error is without merit.
 {¶ 108} For the foregoing reasons, appellants' assignments of error are not well-taken. The judgment of the Lake County Court of Common Pleas is affirmed.
CYNTHIA WESTCOTT RICE, P.J., concurs,
DIANE V. GRENDELL, J., concurs in judgment only.
[1] In their answer, appellees stressed that WKYC-TV3 is a separate corporate entity and that Gannett Co. is not a proper party.
[2] In footnote two in its memorandum in support of its motion for summary judgment, appellee Gannett Co. moved for an award of attorney fees incurred in preparing its motion for summary judgment and reply memorandum pursuant to R.C. 2323.51.
[3] Pursuant to its January 27, 2004 judgment entry, the trial court deferred any hearing regarding attorney fees until completion of the appeal.
[4] The testimony is contradictory with respect to the exact date.
[5] In Horvath, appellant newspaper and reporter appealed the decision from the trial court which entered judgment in favor of plaintiff, the subject of a newspaper article, in his libel suit. An article was published about a drug arrest involving the subject's son. The newspaper and the reporter contended that the article was true, there was no actual malice, and that the subject did not suffer actual damages. This court held that the trial court erred in not entering a judgment notwithstanding the verdict in favor of the newspaper and the reporter. Id. at 34. This court stated that "[a] substantially truthful and accurate report of newsworthy statements has been held to be privileged unless a libel plaintiff can demonstrate that the report was published by a newspaper with actual malice." Id. at 17. This court indicated that there is no requirement that a published report be true in all respects. Id. at 18. *Page 1